This case is Don and David Tealer v. Byars. Ralph Goldberg is here for the appellate, Tealer. Rebecca Dobras is here for the appellees. And Mr. Goldberg, you may begin your argument. Thank you, Your Honor. This is a case of illegal arrest and malicious prosecution. And it's a case of changing warrants where the officer went to the superior court to get a warrant. The judge turned him down. Can I ask you a question about that? Yeah. That's what it seems like to me. Your Honor, there's a number of answers to that. One is that it's alleged in my complaint. And if you take the facts alleged in my complaint as true, as part of 12b-6, then it's assumed for the moment that it's true. The other is that under Federal Rule Evidence 9017, the document has internal indication that it's a public record. It has the badge number of Mr. Byars. It doesn't have his signature, though. It doesn't have his signature. That's correct. It does not. Wouldn't it need his signature to show that it was an affidavit that was signed in support of a warrant? Your Honor, I don't think so. But I think the easiest answer is to go back to the complaint where we alleged that. All right. Thank you. Let me ask you the next question, then. Which is, even if we assume that that happened, that is a violation. Well, it's only a violation of state law if he was acting within the scope of his duties. So two questions. The first one is, he's outside his jurisdiction, so is he acting in the scope of his duties? And the second thing is, even if he's acting within the scope of his duties and it is a violation of that statute, does a violation of state law make it a constitutional violation? Your Honor, the answer in this case is yes. If there's otherwise probable cause or arguable probable cause. Well, I promise you we'll get to probable cause, assuming that I don't waste my time. But let me answer your question, because it's a serious question. In my brief, I started off with Shadwick and Levesque's suggestion that sometimes the validity of the warrant turns on state law. But it depends on the kind of state law. And this court made that very clear in United States v. Taylor, where the judge found that the magistrate in that particular case did not have the authority but did not apply a kind of exclusionary rule. Except that, wasn't that under federal law? That was under federal law, Your Honor. Right, so my question is, if you have a violation of state law, is that a constitutional violation in this context? Your Honor, the court that's really talked about this is the Sixth Circuit. I realize that they're not controlling, but they've made a distinction between violations of state law that affect the jurisdiction of the court to issue a warrant and violations of state law that don't. And they give an example, and that's in the United States v. Beal, which is where a state law, I believe, required two copies of the warrant or something. And the court said, that's kind of irrelevant. But if it says, for example, this court can issue a warrant, that's highly relevant. And that's the point that Lefebvre is getting to when he cites Shadwick from the Supreme Court. But we're talking about whether or not the court even had jurisdiction. And if the court didn't have jurisdiction to issue a warrant, then the warrant's void. But what we're trying to figure out is whether these officers, whether a reasonable officer, would understand that asking the magistrate judge to issue the warrant is a violation of the Fourth Amendment. Maybe he should understand that it's a violation of Georgia law. But what do you have? What case do you have that it would be clear to a reasonable officer that to ask a magistrate judge to issue a warrant for a law enforcement officer is a violation of the Fourth Amendment? Because that's really what magistrate judges do, isn't it? They magistrate judges issue warrants. That's their primary responsibility. Your Honor, except that this time the statute says that a magistrate cannot do it. Yeah, but would that be clear to an officer who goes to magistrate judges all the time to issue warrants, that you can't do it for a law enforcement officer? Well, Your Honor, the statute talks about in the line of duty. And there's a long list of Georgia cases which explain what is in the line of duty. Your Honor, I think the best way I can answer your question is that I can't summarize four or five Sixth Circuit cases that talk about this exact point. They're very brief, and I apologize for not getting into a fuller explanation. But, okay, so let's just assume for the sake of this discussion that you're right and it's a constitutional violation. What clearly established that to the officers? Well, Your Honor, then we get back to the circuit's law about whether or not the officers were acting within the scope of their authority. And that's in the case I believe that Judge Wilson dissented on involving school prayer. And I can't remember the name of the case off the top of my head. Judge Shoflat wrote the opinion. And in that case, the court held that they were acting outside the scope of their duties. In this particular case, the same thing applies. And there's an Alabama case that went up to the 11th Circuit also talking about when the warden was acting outside the scope of his duties. But, Your Honor, I think he's acting with outside the scope of his duties, and he doesn't have qualified immunity. Now, this would not help Ms. Teeler, but it would help Mr. Teeler. But I believe that— But how would it help Mr. Teeler, right? Because it would also have to be clearly established that Mr. Teeler was acting within the scope of his duties as a law enforcement officer at the time he did these things. I mean, why wouldn't that have to be clearly established, then, if we're going to assume that the state law applies here and can establish a constitutional violation? Your Honor, the action was statistical, and we ruled that the duties are outside the scope of the officer's employment, that you do not engage in that analysis. I'm sorry, though. Well, I think I just haven't asked the question well. Let me try one more time. So Mr. Teeler asserts that the reason that this Georgia statute applies is because he was acting as a law enforcement officer. You would agree with me that if he wasn't acting as a law enforcement officer when he engaged in his activities, that this statute doesn't even arguably apply, right? Because it applies only to law enforcement officers, right? Your Honor, I would agree with that. Okay. But I would say that under Georgia law, he has a 24-hour-a-day duty to enforce the law. Okay, so now what I'm asking you is what clearly establishes that when he's acting outside of his jurisdiction and he doesn't have authority outside of his jurisdiction, there is a municipal ordinance that says that, that it was clearly established that he was acting as a law enforcement officer at the time of these events. Your Honor, there's an unbroken line of cases from, I believe, 1972 in the Georgia Court of Appeals all the way up through today. And I'm thinking of City of Winterville versus Strickland, 127 Georgia Appeals 716. Your Honor, in common law, which is still the law in Georgia, if you encounter somebody who was committing what you thought was an offense, you are allowed to arrest that person, and that's still the law in Georgia. He was doing that. There's a case also, Waldo versus Taylor, I believe, where the officers go out of the county because they're investigating something that happened in the county. The defendant in that case argues that they were outside the county when he obstructed the officer and therefore he couldn't be arrested, and the court said no. But, Your Honor, I think I want to get back to the main point, which is that this thing is so clearly established. And it's so clearly established because they go to a superior court judge to begin with. The judge turns him down. Now, what does he do? Does he take it to another superior court judge? He does not. He then goes to a magistrate court judge. Does he take the same warrants to the magistrate judge? He does not. He changes the warrants, and he changes the warrants in such a way as to make it look worse for my clients. And then to make it worse, he doesn't tell the magistrate that he's been to the superior court and the superior court has turned him down. Now, I would suggest to you, Your Honor, that if you look at what we allege he told the superior court, and I'll talk about it when I come back. Well, I would appreciate you talking about it a little bit right now. And one that I understood is your client is indicating that she thought it was a burglar, that information was not included in the warrant, and that somehow that was a material omission. When my understanding of the case law generally is that it's not for the officer on the scene to suss out those legal issues. What he has is a person who's being forcibly detained. Your client admits it was intentional, and that was the scenario that the officer had to deal with and then recount to the magistrate. Your Honor, there are a number of answers to that question. The first one is we're not dealing with a split-second decision. He does two or three days of investigation. He has a videotape provided by my client. Now, what he knew at that particular time and he told the superior court judge was that there was a question as to whether or not the person who was on the roof was there legally. And the reason for that was that the gentleman who had been hired by Ms. Teeler had not shown up two weeks earlier, and he just showed up on this particular day himself, and then he left his worker to fend for himself, and he went off without telling anybody. So the first instance we have that they told the superior court judge that it was unclear whether or not there was supposed to be a contract. By the time he gets to the magistrate, it's clear that there's supposed to be a contract, which was not true. It is also clear from the investigation that the victim himself said that he tried to tell them, but he wasn't sure that they heard. And, in fact, an officer on the scene said that it was all a misunderstanding. So I was under the impression, maybe I misunderstood the record, that Mrs. Teeler continued to hold him for about 10 to 15 minutes until law enforcement came after knowing that he was there because the roofer sent him, even though the roofer, you know, even though, well, let me just start with that. Your Honor, she did not know that he was there because of the roofer. I mean, this would be a different story. Didn't Mr. Scott tell her that? Didn't she concede that Mr. Scott told her that? Well, Mr. Scott told her that, but that was towards the end, right before the officers came. And she continued to hold him after that until the officers came? Right. She was holding him until he showed up. No, until the officers came after Mr. Scott told her that he was not an intruder and he was there to work on the roof, regardless of whether Mr. Scott should have sent him to work on the roof. Your Honor, I'm not quite sure that that's the way it happened. I'd have to go back and check the record. If I get an email, I will say that. Thank you. So I'm trying to figure out why a law enforcement officer would go ask a judge to issue a warrant if he knew that the judge didn't have the authority to issue it. Your Honor, I apologize. I can't hear you. Why would a law enforcement officer go ask a judge to issue an arrest warrant if he knew that that judge did not have the authority to issue the warrant? That seems to suggest that he didn't understand that the judge didn't have the authority to issue the warrant. Your Honor, I think he was just trying to get a warrant. I think that's why he changed the facts on the warrant. I think that's why he omitted the facts on the warrant. I think that's why he didn't tell the magistrate that he'd been to the Superior Court. He was trying to get a warrant because he thought the magistrate judge had the authority to issue the warrant. Your Honor, then we would have to ask the Superior Court in the first place. A law enforcement officer, sometimes you go to get a warrant issued and the judge says, you don't have enough here, you better go back and beef up your application. They might go back to the same judge or they might go back to a different judge who might not be on duty at the time for different reasons. Your Honor, I'm not saying that because the Superior Court denied a warrant that any other judge other than a magistrate would have been bound by the Superior Court judge's decision. What I am saying is that he should have told the magistrate. The Uniform Magistrate's Rules say that at 7.3. He didn't. And if you look at the Superior Court warrant and you look at the magistrate's warrant, you'll see the difference. Okay. Got your argument. Thank you, Mr. Goldberg. We'll hear from Ms. Dobras. My name is Rebecca Dobras and I represent DeKalb County Police Officers Robert Byers, Antonio Catlin, and Brian Danner. In this case, the officers arrested the Teelers for brandishing a gun at, forcefully detaining against his will, and beating up an unsuspecting roofer who was working on Ms. Teeler's roof. He didn't speak English. He didn't know what was going on. He didn't know why he had a gun in his face or why he was being slapped on the face. Counselor, so it's clear courts don't like form shopping. We don't favor judge shopping. But here it sounds like your clients engaged in warrant shopping. Well, first of all, Your Honor, I would like to address that the District Court declined to consider the warrant and the allegations of the Superior Court warrant. So, facts about that warrant, at least in Mr. Teeler's case, is probably not appropriate for this court to dive into because the District Court didn't look at it. But even so, I mean, he says the complaint alleged these as facts, so we have to accept them as true for purposes of our analysis. Respectfully, Your Honors, Mr. Teeler's case does not say anything about a different Superior Court warrant. Ms. Teeler's case does, indeed, have a few allegations about a different warrant. But in any event, what he kind of, what the allegations in Ms. Teeler's complaint, which is the only one that has any allegations about the warrant, what she says was omitted from that warrant, they all go to her defense of that I was acting as a citizen. Can you please, I'm sorry, can you please answer my question? It does appear from the facts of this case that the officers engaged in warrant shopping. Why is that not a reasonable conclusion to reach? I think, Judge, there is no prohibition against going to two judges. There's no rule against it. So that means because there's no rule against it, you go to a Superior Court judge, you don't get the warrant. You go to a magistrate judge, you don't get the warrant. You go to another, that's okay? Is there no prohibition against it? Well, so maybe I misunderstood your colleague, but I thought he said that there is a magistrate judge rule, maybe number seven, that specifies that you can't bring a warrant to the magistrate judge if it's a different judge. Maybe I misunderstood. It's certainly possible. I'm not aware of any rule that says that. I believe the rule he's speaking of is a magistrate rule that pertains to parties. Parties are supposed to let the judges know what happened in other cases. If you actually look at the document. All right, so why doesn't that apply here? It applies to, it doesn't apply to warrants. It's not, if you look at it. Why isn't that another case? It talks about ex parte hearings. A warrant is an ex parte determination. It doesn't, there's no rule that prohibits a judge from going to two different judges to get a warrant. Well, if we find there is a rule that prohibits that, does that sink your clients? No, absolutely not, Your Honor. Why don't you explain why? Well, the document that you're talking about that was not considered by the district court, it actually asked for aggravated assault against Mr. Teeler. Mr. Teeler was not actually charged with aggravated assault. So obviously that is a much more serious offense than what he ended up being charged with. So in that case, you know, it's a very serious felony and going to a superior judge might have made more sense in that case when it's aggravated assault. And not false imprisonment and misdemeanor battery and misdemeanor pointing a gun. Second of all, the document was only for Mr. Teeler. It was not for Mrs. Teeler. And Mrs. Teeler is the only one that raised these allegations in her complaint. So it actually has no relevance to her case whatsoever if you're considering the document that was not considered. I would like to talk about the statute. When you asked the violation of state law, is that a constitutional violation? It's the Teeler's burden to point to a clearly established law. And they have not pointed to a single case citing that statute. They have not cited to a single case explaining what it means to be in the performance of your duties. They have not pointed to a single case showing that the warrants would be void and would create a Fourth Amendment violation in this case. Mr. Teeler was not on the clock. He was not within his jurisdiction of the city of South Fulton, which is a municipality. He was not in uniform. He did not show a badge. In addition, Georgia law specifically says a municipal officer cannot make arrests outside of his jurisdiction. So that goes to even to make it more clear that he was not in the performance of his duties in this case. In any event, it's certainly not clearly established that going to a magistrate under these particular circumstances would be unlawful. Moving on to probable cause, he has not shown a lack of arguable probable cause, which is required for qualified immunity. If you look at the warrants, which are in the record and the pleadings, probable cause exists on its face. Also in the complaint, the Teelers have conceded that they actually did the prohibited conduct that is in the warrants. And this court has said committing the prohibited conduct is enough for probable cause. And great efforts is given to the magistrate's finding of probable cause. In fact, what the Teelers are arguing is that the arrest is unlawful because they were legally, they had legal authority or legal justification because they believed a crime was occurring. Mr. Teeler believes he was acting with legal authority as a law enforcement officer, but again, not in jurisdiction, not in uniform, and Georgia law doesn't allow him to make an arrest outside of his jurisdiction. Ms. Teeler believes she was justified as performing a citizen's arrest, but Georgia law requires a citizen's arrest, the detention, and the use of force must be reasonable. Therefore, both of these contentions are affirmative defenses. They require the resolution of legal questions. They require the resolution of conflicting evidence. And it's well known in this court that affirmative defenses do not contain probable cause, and law enforcement officers do not have a duty to resolve legal questions when making a probable cause determination. They don't have to resolve conflicting evidence in a manner favorable to the suspect, and they're not required to prove every element of the crime. In Rankin, which is an unpublished opinion from this court, very similar facts and very similar defenses made. It was an off-duty state trooper who was arrested for a fray. He argued probable cause was lacking because he was acting in self-defense or in his official capacity as a trooper. This court held that such claims are affirmative defenses, and they do not negate probable cause. And they actually granted the officer's motion to dismiss on qualified immunity grounds. So that's very similar to this case. So you're saying that the allegations that Ms. Teeler argues were omitted, such as the fact that they called 911, such as the fact that she had no expectation of someone on her roof, such as the fact that, again, she was worried about her safety of her home, those are affirmative defenses as opposed to explanations for her behavior? They go to her perception of the incident. So if they're to both, meaning not just affirmative defenses, are you saying then they should have been part of the warrant, correct? The court has said you don't have to resolve conflicting evidence in a manner favorable to the suspect. And the officers did investigate. They interviewed the Teelers. They heard their side of the story. They interviewed the roofer, the roofer's boss, and eyewitnesses. So they're taking into account everybody's perspective. But the suspect's perspective on what happened and what she believes or what he believes happened or what they believed they were doing does not necessarily go to probable cause. Probable cause is whether you committed the act. You don't have to look at every element of the crime. And so the only element that Mr. Teeler is saying was lacking was that he was acting with authority. Well, in his warrant, with authority as a law enforcement officer, in his warrant, his warrant specifically says that he was a law enforcement officer, but that he was not in uniform and not on duty. So that information, at least in the warrant, was provided to the judge. So they were able to consider that information. When this court has denied qualified immunity for a lack of arguable probable cause, that's in situations where it's easily verifiable information that's exclusively established innocence, such as evidence pointing to another person or that the person wasn't even on the scene or that the suspect didn't even do the prohibited acts. None of that exists here. Mr. Teeler, the appellants have proved a lot of cases from the Georgia Court of Appeals, from the Sixth Circuit, you heard Mr. Goldberg mention, Waldo versus Taylor, which is a Georgia Court of Appeals case. None of these cases help him satisfy his qualified immunity. He has to point to authority from this court, from the Georgia Supreme Court or the U.S. Supreme Court, that clearly shows that every reasonable officer would understand that the arrest and the arrest warrants to be unlawful under these circumstances. And he has not pointed to a single case from those courts that clearly established his position here. I'm going to point to a recent case that this court decided since the briefing, and that's Davis versus City of Popka. It's a 2023 case. This court considered similar arguments related to a stand-your-ground defense. The plaintiff claimed, just like here, that the actions were legally justified. And this court reaffirmed all the rules I just stated, that you don't have to prove every element of a crime, that you don't have to resolve every inconsistency in the evidence, and that you're not required to give any credence to the suspect's story. This court found that probable cause existed and ended up dismissing the case. And so the bottom line here is that he is not pointing to any authority where probable cause is the key evidence that presents an unclear and conflicting defense of acting in a law enforcement capacity or engaging in a citizen's arrest. Not one. Not a single case. Going back to the alleged omissions, misrepresentations, Mr. Teeler only says there were only three things in his complaint that he claims were omitted, that he identified himself as the law enforcement officer, that he believed the roofer was committing a burglary, and that he believed the roofer was committing a trespass. None of those omissions go to probable cause. They might be relevant for his criminal defense, but they are not relevant for his, clearly, for probable cause determination. Ms. Teeler, on the other hand, did have a longer list of items. She argued several items were omitted and misrepresented. This is where she talks about the Superior Court warrant, where the warrants are different. But again, if you look at that document, it doesn't even apply to her. And what she alleges was omitted and misrepresented was information about what she thought was happening, information about her side of the story, and information that actually applied to Mr. Teeler's criminal cases and had nothing to do with her own criminal charges. And so, again, these are defenses. It's their perspective. It doesn't affect anything, any of the probable cause determination that the officer made here. Paez v. Mulvey did this exact same analysis on a motion to dismiss, where they looked at defenses raised, conflicting evidence, legal questions, all of that, all of that on a motion to dismiss, misrepresentations, omissions on a warrant. They looked at it, this court looked at it on a motion to dismiss and concluded that even the test is you add the omitted information into the warrant or you subtract the misrepresented items. And you ask, is there still probable cause to arrest? And in Paez, the court said yes, and the district court found that and did that exact same analysis and also found yes, probable cause still existed. So in sum, they have failed to meet their burden on qualified immunity. They have not pointed to a single case supporting their position. And we would ask that you affirm the court's dismissal of both cases against all officers on qualified immunity grounds. Thank you. Thank you, Ms. Dobris. And Mr. Goldberg, you've reserved some time for rebuttal. Your Honor, 7.3 of the magistrate rules does not say that a magistrate did not rule on a case that somebody else has ruled on. What it does say is you have to tell the magistrate that somebody else has ruled on the case or has taken part in ruling on the case. What about your colleague's point that what was presented was substantially different in that it did not seek a warrant on aggravated assault? Your Honor, it doesn't matter. The rule is pretty categorical. All right. And is there anything that you can point to that shows that it's clearly established for purposes of qualified immunity that failing to comport with that would go ahead and violate the plaintiff's Fourth Amendment rights here? Your Honor, yes. Okay. What is that? Carter's different, though, right? Because in Carter, what happened was the officer there knew that the officer knew the whole situation and went ahead and made the arrest anyway. I mean, that was a different situation. Here, what happened was, at least as far as I am understanding the record, and I will go back and double check. Your client, after learning that the roofer was there because Mr. Scott sent him, continued to hold the roofer and not allow the roofer to get up and leave until such time as the officers came. And the officers didn't know, as Mr. Carter did in the Carter case, that your client had not assaulted the roofer. I mean, by her own admission, as I am reading the record, it seems like she concedes that she continued to hold him even after she knew he was there as the roofer. Your Honor, she does not know until she talks. Well, she was there as a roofer. The evidence in the record, let me go back a few steps. Your Honor, I argue that the court should be allowed to consider the two documents under Janoski v. City of Chicago. And it clearly corresponds to the more recent cases in this circuit, particularly Johnson v. Atlanta, which I just lost. But that says that a client or defendant can always attach documents. That's true, but it has to be something that's authenticity is not disputed. And here, the authenticity is disputed. So that's the problem with that. Otherwise, if it weren't disputed, I'd fully agree with you. Well, Your Honor, there's two documents. So there is the report of the officer, which goes on 9 to 12 pages, and the warrant. Now, there is a warrant, but the 9 to 12 pages basically say, and we alleged, that they know. They know that there's a question. And all those charges that he's charged with are exactly like Butts County, because he is acting within his official capacity. And the Foster President says, unless acted on. Your Honor, the Supreme Court also said that a citizen, this is 50 years ago, the Supreme Court of Georgia said that you could use and you should use the citizen's arrest statute. I mean, it has since been repealed. But in this particular case, though, the magistrate judge was advised that Taylor was a law enforcement officer. Your Honor, I apologize again. I just didn't hear your last sentence. The magistrate judge, I mean, there was no misrepresentation to the magistrate judge. Maybe it was the magistrate judge who shouldn't have issued the warrant. As far as the officer is concerned, the officer advised the magistrate judge that Taylor was a law enforcement officer. Your Honor, the officer did not advise the magistrate that, my apologies, did not know who he was, that the officers at the scene had concluded that there was a misunderstanding. Okay, wait. Is Haydad the magistrate judge? He is the magistrate. I'm looking at the affidavit and I'm going to read from the affidavit at the end. And it says, D1, and it's referring to Taylor, was a former police officer with DeKalb County. Unclear if still post-certified, D2 employed as a police officer with South Fulton Police Department. At the time, D2 was not in uniform or a badge and not on duty. Your Honor, though, it was not unclear whether or not the gentleman had been hired. He had not been hired. They knew that. It's not in this warrant, but they knew that. It was not clear that there was a misunderstanding because the victim told Mr. Byers that he thought that Mr. Taylor could not understand him or did not hear him. And those are the affirmative defenses. And we call them affirmative defenses, but I get back to Carter versus Buds. He was acting within his legal authority. And acting within his legal authority means that there was no false imprisonment. And in Carter versus Buds, you set out all the various crimes. And each time you put a statute in place, acting without legal authority. In this case, he was acting within his legal authority. Your Honor, we choose that as a citizen under citizen's arrest law under the Solomon case, which I cited in my brief. I think we have your arguments. Thank you, counsel. The court is in recess until 9 o'clock tomorrow morning. All rise. Thank you.